UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMEDEE GEOTHERMAL VENTURE I,<br><br>Plaintiff,<br><br>v.<br><br>LASSEN MUNICIPAL UTILITY DISTRICT,<br><br>Defendant. | No. 2:11-cv-02483-MCE-DAD<br><br><br><br>**MEMORANDUM AND ORDER** |

    Through the present action, Plaintiff Amedee Geothermal Venture I ("Amedee Geothermal"), a California Limited Partnership, seeks redress against Defendant Lassen Municipal Utility District ("LMUD") for damages allegedly arising from Defendant's reduction of the voltage of the electricity it provided Plaintiff's power plant, from 34.5 kv to 12.47 kv.  Specifically, Plaintiff's Second Amended Complaint alleges the reduction of the electricity voltage amounted to an unconstitutional deprivation and taking of property without due process in violation of the Fourteenth Amendment of the U.S. Constitution, (Second Amended Compl. ("SAC") 5:7–26, ECF No. 13), and an unconstitutional seizure of property in violation of the Fourth Amendment of the U.S. Constitution, (id. at 6:1–8). Plaintiff also asserts several state law claims for, in essence, breach of contract, tortious interference, and negligence.  (See id. at ¶¶ 27–67.)

Presently before the Court are three Cross-Motions for Summary Judgment: two filed by Plaintiff Amedee Geothermal, (ECF No. 76, 78), which Defendant LMUD opposes, (ECF No. 85); and one filed by Defendant LMUD, (ECF No. 77), which Plaintiff opposes, (ECF No. 84). For the following reasons, Defendant's Motion for Summary Judgment (ECF No. 77) is GRANTED as to Plaintiff's federal claims, and Plaintiff's Motions for Partial Summary Judgment (ECF Nos. 76, 78) are DENIED as moot.[1]

## BACKGROUND[2]

Plaintiff Amedee Geothermal is a private entity that runs a geothermal power plant in the Amedee area of Lassen County. (SAC ¶ 3.) Defendant Lassen Municipal Utility District (LMUD) is a local government agency that procures and distributes electrical power within its service area. (Id. ¶ 4.) As such, Plaintiff Amedee Geothermal relies on Defendant to provide it the electrical power it needs to operate the motors at its geothermal power plant which it then uses to generate geothermal electricity. (Id. ¶ 6.) Moreover, Amedee Geothermal relies on LMUD's transmission lines to deliver the electricity its geothermal power plant generates to Pacific Gas & Electric, Co. ("PG&E"). (Pl. AGVI's Statement of Disputed & Undisputed Facts ("Pl.'s SUF") ¶ 2, ECF No. 84-1.)

The controversy in this case centers on the terms of two agreement between Lassen Municipal Utility District and Amedee Geothermal executed in 1987 and 1988. Under the terms of these agreements, essentially, LMUD agreed to supply Amedee Geothermal the electricity it needed, and to transmit the electricity the geothermal power plant produced to PG&E, in exchange for a fee. (See generally SAC, Exs. A & B, ECF Nos. 13-1, 13-2.) These terms are not in dispute. (See Separate Statement of Facts in Supp. of Def.'s Mot. for Summ. J. ("Def.'s SUF") ¶¶ 7–8.)

---

[1] Finding that oral argument would not be of material assistance, the Court previously ordered this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

[2] The following facts are undisputed unless otherwise noted.

The parties dispute, however, whether the agreements required LMUD to continuously supply Amedee Geothermal 34.5 kv electricity, and a controversy arose in 2009 when LMUD converted the electricity supply line from 34.5 kv to 12.47 kv. (Def.'s SUF ¶ 34.) Naturally, Plaintiff asserts that by changing the voltage, the Utility District breached its contractual obligations under the agreement, (SAC ¶¶ 27–29); whereas, Defendant counters the agreement did not obligate the Utility District to continuously provide electricity at the particular 34.5 kv level. (Def.'s Mot. for Summ. J. 23:17–24:7, ECF No. 77-1.) For reasons set forth below, the particulars of this contract dispute are not decided in this order.

Plaintiff filed suit in federal court, and asserted in its initial complaint various state law contract claims for damages, but asserted no federal claims therein. (Compl. ¶¶ 22–67, ECF No. 1.)[3] After Defendant moved to dismiss the initial complaint for lack of federal question subject matter jurisdiction, (ECF No. 8), Plaintiff filed its Second Amended Complaint (the operative complaint) in which it therein asserts two federal constitutional claims against the Lassen Municipal Utility District, (SAC ¶¶ 20–26, ECF No. 13). These federal constitutional claims—for violation of the Fourth, Fifth, and Fourteenth Amendments—then formed Plaintiff's asserted basis for federal question subject matter jurisdiction, (see id. ¶ 1), and these claims are discussed in detail below.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

---

[3] Plaintiff instead asserted federal question subject matter jurisdiction arose from the fact that "the transmission of electric power is regulated by the Federal Energy Regulatory Commission ('FERC')." (Compl. ¶ 1, ECF No. 1.)

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

3

One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp., 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations ... or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

1   Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448
2   (1871)) (emphasis in original).  As the Supreme Court explained, "[w]hen the moving
3   party has carried its burden under Rule [56(a)], its opponent must do more than simply
4   show that there is some metaphysical doubt as to the material facts."  Matsushita, 475
5   U.S. at 586.  Therefore, "[w]here the record taken as a whole could not lead a rational
6   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Id. at
7   587.
8        In resolving a summary judgment motion, the evidence of the opposing party is to
9   be believed, and all reasonable inferences that may be drawn from the facts placed
10  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at
11  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
12  obligation to produce a factual predicate from which the inference may be drawn.
13  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd,
14  810 F.2d 898 (9th Cir.1987).
15
16                                    **ANALYSIS**
17
18       Defendant moves for summary judgment on Plaintiff's federal claims and asks
19  that the Court decline to continue to exercise supplemental jurisdiction over this case—
20  which, Defendant argues, is essentially a state law contract case.  (Def.'s Mot. for
21  Summ. J. 1:15–19, ECF No. 77-1.)  Plaintiff moves—in two separate motions—for partial
22  summary judgment on several of its state law claims.  (ECF Nos. 76, 78.)  For the
23  reasons stated below, the Court grants Defendant's Motion for Summary Judgment as to
24  Plaintiff's federal claims, declines to exercise supplemental jurisdiction over the
25  remaining state law claims, and denies Plaintiff's motions for partial summary judgment
26  as moot.
27  ///
28  ///

### A. Defendant's Monell Argument

Defendant argues summary judgment should be granted on Plaintiff's federal constitutional claims because Plaintiff "has no evidence to show that any illegal conduct of LMUD employees may fairly be said to represent LMUD's official policy or that execution of an LMUD policy or custom inflicted its injuries—a seizure and a taking," and therefore, "Monell does not give [Plaintiff] a Section 1983 cause of action against LMUD . . . ." (Def.'s Mot. for Summ. J. 11:6–12, ECF No. 77-1.)[5] Plaintiff counters that its proffered "evidence is clear that . . . LMUD itself . . . 'implement[ed] or execute[d] a policy statement, or decision officially adopted and promulgated by LMUD's officers.'" (Pl.'s Opp'n 5:14–18, ECF No. 84 (internal alteration omitted) (quoting Monell v. N.Y. City Dep't of Social Servs., 436 U.S. 658, 690 (1978)).) Specifically, Plaintiff contends "the activity complained of . . . was perpetrated by the Board and Officers of LMUD." (Id. at 5:19–20.) Defendant, for its part, concedes the LMUD Board had policymaking authority, (Def.'s Reply 2 n.1, ECF No. 88 ("In this case, **the Board** is the final policy maker for purposes of municipal liability . . . ." (emphasis in original))), but argues "none of the evidence [Plaintiff] cites establishes or even creates a reasonable inference that the line change was the result of any official policy of LMUD," (id. at 2:19–22).

The Supreme Court has held that Monell "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body . . . ." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Moreover, the "official policy must [also] be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981).

///

---

[5] Defendant also points out that Plaintiff has not specifically invoked a statutory private right of action for its constitutional claims, such as 42 U.S.C. § 1983. Plaintiff does specifically invoke § 1983 in its opposition to summary judgment, however, and its "claims will be construed as such even though the complaint does not specifically invoke § 1983." Salvatto v. Cnty. of Solano, No. 2:04-cv-0163 WBS GGH, 2007 WL 926788, at *2 n.2 (E.D. Cal. Mar. 27, 2007).

The only evidence Plaintiff has offered to support its contention that the line change was approved by the LMUD Board is the following deposition testimony of Ray Luhring, LMUD's General Manager:

> Q. And also was it your understanding then that delivery of power under the transmission agreement was at 34.5 kV?
>
> A. Yes, sir.
>
> Q. At any time during your tenure at LMUD did that change?
>
> A. Yes, sir.
>
> Q. When did it change?
>
> A. I don't know what date that would be.
>
> Q. Okay. What did it change to?
>
> A. It changed I believe to 12,470.
>
> Q. And did you—was it—can you tell me what the process was at LMUD by which this change came about?
>
> A. There were several projects that are laid out as—as work to go, five year plans, those types of things that had been discussed for years, different things and projects to do. And as I recall, this happened to be one of them, was to—to look at the possibility of eliminating the 34-5 basically because we had one big transformer sitting in a substation that, you know, was energized and didn't have much to and I believe only had two loads connected to it, if I recall correctly. And that—that was the reasoning behind it, as I recall.
>
> Q. <u>Was this action, was it approved by the board?</u>
>
> A. <u>It would have been in—in the five year plan or the plan we—we gave out as a capital improvement plan over several years.</u>
>
> Q. <u>Do you have any specific recollection of attending a board meeting where this was approved?</u>
>
> A. <u>I would say that—I recall having it presented, going over the different projects that were there. I don't know that there was an actual approval as much as it was information.</u>
>
> Q. Who made the presentation?

> A. Mr. Folce.
>
> Q. And do you recall what period—what—when that was? The approximate time period?
>
> A. Boy, I sure don't.

(Decl. Robert M. Mitchell in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. 7, Dep. Ray Luhring 28:6–29:18, ECF No. 86-7 (emphasis added).)[6]

From this deposition testimony, Plaintiff argues Luhring "testified unambiguously . . . that changing the capacity of the LMUD line from 34.5 to 12.47 kV was a decision made by its governing body as part of a 5 year plan of projects LMUD intended to implement . . . ." (Pl.'s Opp'n 5:20–24.)

Defendant argues this testimony is not enough to create a genuine dispute of material fact, because Ray Luhring merely stated in his deposition "that Mr. Folce informed the board of the line change. No official action was taken with respect to the line change." (Def.'s Reply 2:13–16.) Further, Defendant argues Plaintiff fails to produce any evidence that Luhring or Folce were official policymakers for Lassen Municipal Utility District. Thus, Defendant argues Plaintiff has produced insufficient evidence "to show that this decision was made by an official policy maker." (Id. at 2:12–13.)

In this case, deciding whether Plaintiff's proffered evidence reveals a genuine dispute of material fact requires review of summary judgment principles. The Supreme Court has held that "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986) (citations omitted). Further, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor.

---

[6] Defendant objects to the admissibility of this evidence, arguing this evidence is inadmissible because Plaintiff "failed to properly authenticate the deposition transcript." (Def.'s Objections to Pl.'s Evidence in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. ¶ 32, ECF No. 88-1.) However, "in light of the Court's resolution" of the Monell issue below, "the Court need not and will not address th[is] evidentiary objection[]." Gibson v. Cnty. of Riverside, 181 F. Supp. 2d 1057, 1080 n. 20 (C.D. Cal. 2002).

The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citation omitted). "[I]n this context . . . our 'inquiry focuses on whether the nonmoving party has come forward with sufficiently 'specific' facts from which to draw reasonable inferences about other material facts that are necessary elements of the nonmoving party's claim.'" Id. Moreover, "[a] party to a lawsuit cannot ward off summary judgment with a[] . . . deposition based on rumor or conjecture." Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989) (Posner, J.); see also Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (per curiam) (affirming summary judgment granted for defendant on age-discrimination employment claim, even though plaintiff proffered evidence of a "supervisor Steven Lawrence [commented] to Nesbit during a meeting . . . '[w]e don't necessarily like grey hair,'" and "Roger King, [Defendant's] Senior Vice President of Personnel," stated "[i]n the interview . . . : 'We don't want unpromotable fifty-year olds around,'" reasoning this evidence is "at best weak circumstantial evidence of discriminatory animus," and "very general and did not relate in any way, directly or indirectly, to the terminations of Nesbit or Selby").

Here, Plaintiff's evidence is insufficiently specific to create a genuine dispute of material fact. As Defendant correctly points out, Luhring's testimony only tends to show the board was informed about the change from 34.5 to 12.75 kv. In response to the specific question, "Was this action . . . approved by the board?," Luhring responded equivocally. (Dep. Luhring 29:5.) Luhring then contradicted the inference that the line change was approved by the board: "I don't know that there was an actual approval as much as it was information." (Id. at 29:12–13.) No reasonable jury could infer from this general and self-contradictory testimony that the board specifically voted to change the electricity voltage of the supply line to Plaintiff's power plant from 34.5 to 12.75 kv. At most, Plaintiff's proffered evidence is a mere "scintilla of evidence," insufficient to defeat Defendant's motion for summary judgment. Triton Energy Corp., 68 F.3d at 1221.

///

1  Therefore, Defendant's motion for summary judgment on Plaintiff's § 1983 Monell
2  claims—its sole federal claims—is granted on this ground alone.

### B. Defendant's Arguments that Plaintiff's Constitutional Claims Fail

Moreover, even assuming Plaintiff's Monell claim survives summary judgment, Defendant argues Plaintiff's underlying constitutional claims do not survive summary judgment either. For the reasons that follow, the Court holds that summary judgment should be granted on the merits of Plaintiff's federal constitutional claims as well.

#### 1. Fourth Amendment Claim

Plaintiff asserts LMUD's actions, to reduce "the electrical power capacity" supplied to Amedee Geothermal from 34.5 kv to 12.75 kv, amounted to "a seizure under color of law of the property of [Plaintiff] in violation of the Fourth Amendment to the United States Constitution." (SAC 6:5–8, ECF No. 13.) Defendant moves for summary judgment on this claim, arguing the "Fourth Amendment has not been extended to the type of conduct alleged here." (Def.'s Mot. for Summ. J. 16:3–6 (citing Myers v. Baca, 325 F. Supp. 2d 1095, 1103–04 (C.D. Cal. 2004) (holding that "in order for non-law enforcement governmental conduct to be considered a search or seizure under the Fourth Amendment, such conduct must have 'as its purpose the intention to elicit benefit for the government in either its investigative or administrative capacities.'")).) Plaintiff counters "LMUD interfered with [Plaintiff's] possessory interest in its property primarily by interfering with its contractual right to receive 34.5 kV in electric power." (Pl.'s Opp'n 12:7–8 (emphasis added).)

"The Fourth Amendment protects two types of expectations, one involving 'searches,' the other 'seizures. . . .' A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." Lavan v. City of Los Angeles, 693 F.3d 1022, 1027–28 (9th Cir. 2012) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

///
///

Moreover, the Ninth Circuit has observed that in the rare instances that the U.S. Supreme Court "has considered the application of the fourth amendment to governmental conduct in a noncriminal context, it has been careful to observe that the application of the amendment is limited." United States v. Attson, 900 F.2d 1427, 1430 (9th Cir. 1990). Thus, the Ninth Circuit has held "governmental conduct which is not actuated by an investigative or administrative purpose will not be considered a 'search' or 'seizure' for purposes of the fourth amendment." Id. at 1431.

In this case, as Defendant rightly points out in reply, Plaintiff points to no authority for the proposition that its asserted contractual right to continued 34.5 kv electricity rises to a property interest protected by the Fourth Amendment. In light of the Ninth Circuit's recognition that the Fourth Amendment's applicability beyond the criminal-investigation context is "limited," Attson, 900 F.2d at 1430, this Court is unwilling to recognize Plaintiff's asserted basis for relief in the absence of any authority. Moreover, Plaintiff has proffered no evidence that the governmental conduct in this case was "actuated by an investigative or administrative purpose." Id. at 1431. Accordingly, Defendant's motion for summary judgment is granted on Plaintiff's Fourth Amendment claim.

### 2. Fifth and Fourteenth Amendment Taking Claim

Plaintiff asserts LMUD's changing of the capacity of the line from 34.5 kv to 12.47 kv "deprived [Plaintiff] of its property and . . . ability to produce revenue," such that "LMUD's conduct was an unconstitutional taking without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution." (SAC 5:23–26.) Defendant moves to dismiss this claim arguing, inter alia, that Plaintiff has not exhausted state administrative remedies because Plaintiff has not yet sought "compensation under the state's inverse condemnation procedures." (Def.'s Mot. for Summ. J. 12:13–16 (citing Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 n.13 (1985)).)

///

///

1   Plaintiff does not dispute in its opposition that it has not yet availed itself state inverse
2   condemnation remedies;[7] however, Plaintiff insists the Court should exercise its
3   supplemental jurisdiction over the takings claim under Picard v. Bay Area Reg'l Transit
4   Dist., 823 F. Supp. 1519, 1526 (N.D. Cal. 1993).  (See Pl.'s Opp'n 9:12–10:23.)

"[A] plaintiff cannot bring a section 1983 [takings claim] in federal court until the [government entity] denies just compensation." Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo, 548 F.3d 1184, 1191 (9th Cir. 2008).  Here, Plaintiff has "not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195–97 (1985).

Moreover, Plaintiff's reliance on Picard v. Bay Area Regional Transit District is misplaced.  823 F. Supp. 1519 (N.D. Cal. 1993).  In Picard, the district court held that the plaintiff had not exhausted its state administrative remedies, but exercised its supplemental jurisdiction over the taking claim nonetheless.  The court reasoned that "a district court may properly exercise pendent jurisdiction over a state taking claim after having dismissed a federal taking claim for lack of ripeness if the district court has subject matter jurisdiction over another claim in the action." Picard, 823 F. Supp. at 1527 (emphasis added) (citing Sinaloa Lake Owner's Ass'n v. City of Simi Valley, 882 F.2d 1398, 1404 n.4 (9th Cir. 1989)).  Because there was jurisdiction over another federal claim, the court in Picard exercised supplemental jurisdiction over the taking claim even though it was not exhausted.  Id.

In this case, Plaintiff's only other federal claim—for violation of the Fourth Amendment—does not survive summary judgment, for the reasons stated above.

///

---

[7] Plaintiff asserts in its Opposition brief that it met the exhaustion requirement in a footnote, (Pl.'s Opp'n 9 n.9); however, Plaintiff does not provide argument or evidence that it availed itself of California's inverse condemnation procedure.  Instead, to support its argument that it met the exhaustion requirement, Plaintiff's footnote points to a section of its Opposition brief in which Plaintiff argues it complied with the Government Tort Claims Act, Cal. Gov't Code § 905.  However, the presentment requirement for tort claims against government entities is not germane to the requirement that a plaintiff avail itself of the state's inverse condemnation procedures before bringing a taking claim in federal court.

Thus, Picard does not apply because, unlike Picard, here, there is no subject matter jurisdiction over another federal claim that survives summary judgment. Therefore, and for the reasons that follow, the Court denies Plaintiff's request that the Court exercise supplemental jurisdiction over its unexhausted takings claim.

### C. Supplemental Jurisdiction

Defendant requests that the Court "decline to exercise supplemental jurisdiction over the remaining state law claims." (Def.'s Mot. for Summary J. 16:9–12.) Pursuant to 28 U.S.C. § 1367(c)(3), if a federal district court has dismissed all claims over which it has original jurisdiction, it may, in its discretion, dismiss without prejudice supplemental state law claims brought in the same action. 28 U.S.C. § 1367(c)(3); see Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). Several factors are considered in determining whether the Court should continue to exercise its jurisdiction over state law claims. These factors include economy, convenience, fairness, and comity in deciding whether to retain jurisdiction over pendent state claims. Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992) (citing Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 353 (1988)). Although the Court is not required to dismiss the supplemental state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–Mellon Univ., 484 U.S. at 350 n. 7; see also Schneider v. TRW, Inc., 938 F.2d 986, 993–94 (9th Cir.1991).

Here, the Carnegie–Mellon factors weigh in favor of dismissal. Only state law claims remain, and the case has yet to proceed to trial. Judicial economy does not favor continuing to exercise supplemental jurisdiction. Nor do the comity and fairness factors weigh in favor of exercising supplemental jurisdiction since "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Plaintiff's state law claims are therefore DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c).

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that,

1. Defendant's Motion for Summary Judgment (ECF No. 77) is GRANTED as to Plaintiff's federal claims;
2. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE;
3. Plaintiff's Motions for Partial Summary Judgment (ECF Nos. 76 and 78) are DENIED as moot; and
4. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: November 26, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT